IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**ANGELA TORRES** and
**KRISTI KOTROUS**

       Plaintiffs,

  vs.                                                                         09-cv-974 MCA/RLP

**COMPUTER SCIENCES CORPORATION**,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *Defendant Computer Sciences Corporation's Motion For Partial Summary Judgment* [Doc 28], filed June 25, 2010. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the *Motion*.

**I.**      **BACKGROUND**

Plaintiffs, Angela Torres and Kristi Kotrous, were employed as security guards for Defendant Computer Sciences Corporation (CSC), which until February 2008, held the contract for security services at Holloman Air Force Base in Alamagordo, New Mexico. As of March 1, 2008, the security services contract went to SecTek, Inc., and its subcontractor TW and Company (TW). Plaintiffs were informed in October 2007 that their employment with CSC would be terminated in December 2007, due to the loss of the contract. The contract, however, was extended until February 29, 2008.

Dwayne Nash was the Site Manager for CSC during the time that CSC held the contract—through February 29, 2008. On January 16, 2008, Mr. Nash was also hired by the new contractor, TW, to continue to perform as Site Manager. Thus, Mr. Nash worked for both companies for a period of time. TW requested that Mr. Nash make recommendations regarding which CSC employees should be hired by TW to continue working the Holloman Air Force Base contract. Mr. Nash passed on some negative information about Plaintiffs, who were ultimately not hired by TW. On February 29, 2008, Mr. Nash informed Plaintiffs that their employment with CSC was terminated and that they would not be hired by TW.

On September 3, 2009, after pursuing a complaint with the Equal Employment Opportunity Commission and the New Mexico Department of Labor, Plaintiffs filed suit in the Twelfth Judicial District of New Mexico. [Doc 1-2 at 2] Plaintiffs alleged that during their employment, they were "sexually harassed by employees and managers of [CSC]," that Mr. Nash threatened them in order to prevent them from pursing an internal sexual harassment complaint, and that Mr. Nash retaliated against Plaintiffs by providing TW with false information and failing to pass on their employment applications. [Doc 1-2 at 2] Plaintiffs posit that CSC is vicariously liable for the actions of Mr. Nash. CSC removed the action to this Court on October 8, 2009. [See Doc 1] Discovery concluded on June 11, 2010, and CSC has filed *Defendant Computer Sciences Corporation's Motion For Partial Summary Judgment* [Doc 28], which challenges only Plaintiffs' claim for retaliation.

## II.     ANALYSIS

Summary judgment under Federal Rule of Civil Procedure 56(c) "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading. . . ." Fed.R.Civ.P. 56(e)(2).  Instead, "its response must . . . set out specific facts showing a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324.  It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).   Having set forth the standard of

review, I turn to the legal framework for the parties' arguments.

Title VII prohibits retaliation in two forms, making it unlawful for an employer to discriminate against an employee who has "opposed any practice made an unlawful employment practice by this subchapter" or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order to state a claim for retaliation under Title VII, Plaintiffs must show (1) that they "engaged in protected opposition to discrimination," (2) that they "suffered an adverse action that a reasonable employee would have found material," and (3) that a causal nexus exists between [their] opposition and the employer's adverse action." Montes v. Vail Clinic, Inc., 497 F.3d 1160, 1176 (10th Cir. 2007); Hillig v. Rumsfeld, 381 F.3d 1028, 1035 (10th Cir. 2004) (holding that negative references can be sufficient to demonstrate an "adverse employment action").

An employer is vicariously liable for "both negligent and intentional torts committed by an employee within the scope of his or her employment." Burlington Indust., Inc. v. Ellerth, 524 U.S. 742, 756 (1998). It is "less likely," however, "that a willful tort will properly be held to be in the course of employment and that the liability of the master for such torts will naturally be more limited," and thus, "[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." Id. at 756, 757 (internal quotation marks and citation omitted). There are well-established exceptions to this general rule, however, and in relevant part, an employer is liable for the actions of an employee when "the employee was aided in accomplishing the tort by the

existence of the agency relation." Id. at 759-60 (internal quotation marks and citation omitted) (explaining that "[w]hen a party seeks to impose vicarious liability based on an agent's misuse of delegated authority, the Restatement's [(Second) of Agency (1957)] aided in the agency relation rule, rather than the apparent authority rule, appears to be the appropriate form of analysis").[1]  The Burlington Court identified "a class of cases" that satisfy the "aided in accomplishing" standard:  those where a supervisor takes a "tangible employment action against the subordinate." Id. at 760.

Based on these legal principles, Plaintiffs argue that Nash, acting as agent for CSC, retaliated against them by providing false information to TW and by refusing to pass on Plaintiffs' applications to TW.  [Doc 30 at 2]  Because Nash was working as Site Manager for CSC, Plaintiffs maintain that CSC is vicariously liable for Nash's allegedly discriminatory behavior.  [Id.]  CSC responds with the following:

> Plaintiff's claim for retaliation must fail because the person alleged to have been responsible for the adverse action (TW's decision not to hire these Plaintiffs) was Michael Anduha, Vice President for TW, following discussions with Dwayne Nash, who at the time was clearly acting in his capacity as Site Manager for TW.

---

[1] Plaintiffs cite a great deal of New Mexico authority in order to establish the agency principles that will guide this Court.  The Supreme Court of the United States, however, has explained that because "Congress has directed federal courts to interpret Title VII based on agency principles, . . . a uniform and predictable standard must be established as a matter of federal law. " Burlington, 524 U.S. at 754.  The Burlington Court thus relied "on the general common law of agency, rather than on the law of any particular State, to give meaning to these terms." Id. at 754-55 (internal quotation marks and citation omitted).  Accordingly, this Court will do the same.

[Doc 29 at 5]  CSC states that "[t]he failure to hire is the sole action from which Plaintiff's alleged damages flow."  [Doc 31 at 2]  Further, CSC asserts that the "allegation that [Plaintiffs] were retaliated against when their applications for employment were not forwarded to TW was not a materially adverse action."  [Id.]

Our Circuit has explained that "[a]n adverse employment action must be materially adverse to the employee's job status."  Fischer v. Forrestwood Co., Inc., 525 F.3d 972, 979 (10th Cir. 2008) (internal quotation marks and citation omitted).  "In other words, the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1123 (10th Cir. 2007) (internal quotation marks and citation omitted).  Based on this standard, if true, Nash's alleged failure to forward Plaintiffs' applications to TW could constitute a materially adverse action—a reasonable employee could be dissuaded from complaining about sexual harassment if faced with the likelihood that future employment will be thwarted.

Thus, the primary dispute between the parties is whether Nash took the alleged actions in furtherance of CSC's goals or on behalf of TW.  It is undisputed that Nash worked for both CSC and TW at the time of the alleged discrimination.  [See Doc 30-1 at 1; Doc 29-1 at 7]  In support of her position that Nash was acting for CSC, and not TW, Plaintiffs submit an employee separation document and two unsworn declarations.  [See Doc 30-1; Doc 30-2; Doc 30-3]  The employee separation document confirms what is uncontested:  Nash worked for CSC until March 6, 2008, after the acts were allegedly

taken. [Doc 30-1 at 1]

In the first declaration and in relevant part, Plaintiff Torres avers (1) that Nash was her supervisor at CSC; (2) that Nash answered the phone "CSC, this is Chief Nash;" (3) that Nash informed her that TW had not hired her; (4) that Nash was working for both companies; (5) that Nash did not say that he wasn't working for CSC; (6) that before she was terminated, Nash told Plaintiff Torres that he had reviewed her TW application and that everything "look[ed] good." [Doc 30-2 at 1-2] Plaintiff Kotrous submits a second declaration, adding little to Torres's statements other than (1) that Plaintiff Kotrous felt that Nash "threw" the fact that he was being paid by both companies in her face; (2) that Nash was wearing his CSC identification badge the day that Plaintiff Kotrous was terminated; (3) that Nash stated that Plaintiff Kotrous "was not being picked up by the new contractor TW & Company;" and (4) that when Plaintiff Kotrous asked who made the decision not to hire her, Nash responded "something to the effect that he was given the authority to decide who was picked up and who wasn't." [Doc 30-3 at 1-2]

Completely absent from Plaintiffs' proof is any indication that as a CSC Site Manager, Nash was responsible for forwarding the applications of CSC employees to the new contractor. Indeed, according to CSC's business manager, CSC was required by law only to provide the incoming contractor with a "Seniority List"—a list of CSC employees who worked at "all the sites where CSC had served as the security contractor." [Doc 29-1 at 2] CSC provided that list to SecTek, Inc., the primary contractor. [Id.] Plaintiffs' names were included on the Seniority List. Plaintiffs do not dispute this evidence—to the

contrary, Plaintiffs ignore this evidence.

The remainder of Plaintiffs' evidence does not support a reasonable conclusion that when Nash took the remaining alleged retaliatory actions—providing TW with false information about Plaintiffs—he was acting on behalf of CSC.  Plaintiffs have established that Nash was working for CSC, that he wore the CSC uniform and badge, and that he answered the phone "CSC, this is Chief Nash."  Assuming all of Plaintiffs' evidence to be true and drawing all inferences in their favor, Plaintiffs have pointed to nothing to demonstrate that Nash, as Plaintiffs' current CSC Site Manager, provided TW with negative professional references.  See Hunt, 526 U.S. at 551-52.  Plaintiff Kotrous stated in her declaration that Nash was "given the authority to decide who was picked up and who wasn't."  [Doc 30-3 at 2]  In addition, Nash further testified at his deposition that Plaintiffs weren't picked up by TW because TW "didn't want certain employees working the new contract . . . . like ones that have caused issues."  [Doc 29-1 at 10]  The only reasonable inference is that Nash was using the authority that TW gave to him to make hiring recommendations to TW.

It is inevitable that Nash would use his experiences with Plaintiffs during their time together at CSC in order to make the hiring recommendations.  The limited evidence offered by the parties, however, demonstrates that it was TW that valued Nash's prior experiences, that empowered Nash to make the hiring recommendations, and that according to Nash, instructed him that the company was not interested in employees "that have caused issues."  Plaintiffs have provided no evidence to support a reasonable

inference that CSC, and not TW, should be subject to vicarious liability for Nash's allegedly providing negative information to TW.  See Kannady v. City of Kiowa, 590 F.3d 1161, 1169 (10th Cir. 2010) ("[T]he nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks and citation omitted)).

### III.  CONCLUSION

Plaintiffs have provided no evidence from which a reasonable juror could infer that Nash was advancing CSC's interests when he allegedly provided TW with negative information about Plaintiffs.

**IT IS THEREFORE ORDERED** that *Defendant Computer Sciences Corporation's Motion For Partial Summary Judgment* [Doc 28] is **GRANTED** and Plaintiffs' retaliation claim against CSC is **DISMISSED**.

**SO ORDERED** this 27th day of October, 2010, in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
United States District Judge